Samuel **LOPEZ QUINONES,** et al, Plaintiffs,

v.

**PUERTO RICO NATIONAL GUARD,** et al, Defendants.

Civil No.: 04–2187 (DRD).

United States District Court, D. Puerto Rico.

May 26, 2010.

Opinion Denying Reconsideration June 3, 2010.

Efrain Maceira–Ortiz, Urb. Perez Morris, San Juan, PR, for Plaintiffs.

Jorge Martinez–Luciano, Pedro Ortiz Alvarez Law Offices, Ponce, PR, Minnella Rivera–Mulero, Department of Justice, General Litigation Office, San Juan, PR, for Defendants.

## OPINION AND ORDER

DANIEL R. DOMINGUEZ, District Judge.

## I.  BACKGROUND

The instant case was an action for employment discrimination on the basis of political affiliation brought under 42 U.S.C. § 1983.  At the outset of the case, after Plaintiffs[1] filed a motion for preliminary injunction (Docket No. 46), the Court held numerous hearings to determine whether a preliminary injunction was appropriate in the instant case (Docket Nos. 72, 76, 79, 80, 85, 103, 104, 105 & 116).  Ultimately, the Court denied Plaintiffs' motion for a preliminary injunction (Docket Nos. 135 & 138), citing the necessity of making credibility determinations and weighing evidence to determining the likelihood of success of the case as its reason for the denial.

The Court also granted dismissal of claims for economic damages against Defendants in their official capacities (Docket No. 107).  Subsequently, the Court found

that Plaintiff's position of employment was a non-political career position and, accordingly, found that Defendants who were sued in their individual capacities were not shielded by qualified immunity (Docket Nos. 164 & 165).  Defendants appealed this decision (Docket No. 167) and the First Circuit vacated the Court's order denying qualified immunity, finding that it was not clearly established at the time of the alleged violation that Plaintiff's position was a career position (Docket No. 175).  However, the First Circuit also affirmed the Court's decision that Plaintiff's position of employment was, in fact, a career position.  Shortly thereafter, a jury trial was held (Docket Nos. 208, 209, 211, 214, 215, 216 & 217).  The jury found by a preponderance of the evidence in favor of Plaintiff (Docket No. 219) and the Court entered judgment accordingly (Docket No. 225).  Thereafter, the Court ordered that Plaintiff be reinstated in his former position or an equivalent position, noting that this was the only remedy available to Plaintiff (Docket No. 274).

On October 28, 2009, Plaintiff submitted his *Bill of Costs* (Docket No. 288), in which he requested recovery of several costs pursuant to his status as a prevailing party.  Specifically, Plaintiff requested that the Court tax Defendants $150.00 for the filing fee in the instant case, $1,620.63 for photocopies made, $5,791.11 in translation costs, $1,434.70 in interpreter costs, $3,646.40 for transcripts and $530.00 for issuance of summons.  Additionally, Plaintiffs filed a motion for attorney's fees (Docket No. 289), requesting that the Court impose

---

1.  The original Plaintiffs were Plaintiff Samuel Lopez Quinones (hereinafter "Plaintiff"), his wife and the conjugal partnership between them (hereinafter collectively "Plaintiffs").  Ultimately, only Plaintiff prevailed in the instant action.  Originally, there were

also several Defendants; however, Plaintiff only prevailed against Defendants Major General Antonio J. Vicens in his official capacity and the Puerto Rico National Guard ("Defendants")

upon Defendants $224,237.85 in attorneys' fees.

Defendants later opposed both Plaintiff's motion for attorneys' fees (Docket No. 296) and Plaintiff's bill of costs (Docket No. 301). Defendants first argued that, although Plaintiff was technically a prevailing party, he had received only a small fraction of the relief which he originally sought against only a few of the original Defendants and, accordingly, the attorneys' fees should be reduced. Further, Defendants asserted that, because Plaintiff was not successful in either his request for preliminary injunction or at an interlocutory appeal, he is not entitled to attorneys' fees related to these endeavors. Defendants further contest both the rate and the number of hours billed for paralegal work by Plaintiff's counsel. Additionally, Defendants argue that some of the fees requested were unjustified or superfluous.

Defendants also opposed Plaintiff's request for costs associated with serving process on the individual Defendants against whom the action was dismissed, stating that these Defendants are, in fact, prevailing parties themselves. Further, Defendants opposed Plaintiff's request for reimbursement for transcripts as they are not usually taxed as costs unless the proceedings are either lengthy or complex. Finally, Defendants objected to the taxation of costs associated with use of an interpreter during the preliminary injunction hearing, as the motion for preliminary injunction was ultimately denied.

On December 22, 2009, the Court conducted a hearing regarding Plaintiff's requests for fees and costs (Docket No. 318). At that hearing, the Court urged the parties to meet to discuss compromise regarding imposition of costs and fees, notifying the Court of the outcome of that meeting.

On February 2, 2010, the parties filed their *Joint Motion Regarding the Parties' Stipulations on the Matter of Plaintiffs' Application for Costs and Attorney's Fees* (Docket No. 323). Therein, the Parties stipulated that the hourly rates were reasonable, that Plaintiff is entitled to tax the filing fee as a cost, as well as expenses for the service of process on the parties against whom the case was not dismissed, that Plaintiff is entitled to recover costs of most translations, that Plaintiff is entitled to recover duly identified and itemized photocopies at a rate of $0.15 per copy and that Plaintiff is entitled to recover for all the time expended in opposing Docket No. 87.

In this submission, the parties also outlined their remaining disagreements regarding the imposition of attorneys' fees and taxation of costs. First, Defendants reiterated their objection to the taxation of costs for service on Defendants in their individual capacities. In response, Plaintiffs argued that the criteria for granting the taxation of this cost is whether the costs were reasonably necessary for maintenance of the action and, accordingly, the cost should indeed be taxed. Next, Defendants restated their objection to the taxation of photocopying expenses and Plaintiff countered by asserting that these expenses were necessary to the case and, further, that the costs are supported by evidence on the record. Defendants also repeated their objection to the taxation of $630.00 in interpreter expenses related to the preliminary injunction hearings, to which Plaintiff responded that these expenses were reasonably necessary for the maintenance of the action. Defendants also objected to the taxation of the transcripts for the preliminary injunction proceedings, stating that they were purchased out of convenience rather than necessity. Plaintiff responded that the transcripts were used for cross examination and impeachment of witnesses.

Defendants then requested that a global reduction be made for the limited nature of Plaintiff's success and further requested that Plaintiff not be awarded any fees for work performed for the unsuccessful appeal or motion for preliminary injunction. Defendants also reiterated their objection to the entries for tasks performed by paralegals. Plaintiff replied that the hours billed were not duplicative and that Defendants actually benefitted from having paralegals perform this work as it was less expensive than it would have been if the attorneys performed it. Defendants also objected to the invoicing of document review and other menial tasks at a rate of a quarter of an hour or more, to which Plaintiff responded that, on the few instances where counsel billed in excess of 0.10 hours, the documents were long and/or complex. Finally, Defendants continued to object to the amount of time invoiced for trial preparation.

On February 10, 2010, the Court held another hearing (Docket No. 328) regarding the motion for fees and bill of costs. At that hearing, the Court notified Plaintiff that it would not allow reimbursement for service of process unless the individual Defendants were also served for injunctive relief. Additionally, the Court approved the $0.15 per page fee, but warned Plaintiff that he must identify the documents which were photocopied Further, the Court determined that it would not authorize the cost of translation or transcripts unless the testimony was later used to impeach or on direct examination. With regards to the remaining disputes over

fees associated with the motion for injunctive relief and appeal and those billed by paralegals, the Court instructed the parties to meet once more to attempt to reach an agreement and further noted that it would investigate the appropriateness of a global reduction at a later hearing.

On March 20, 2010, the parties filed a joint motion to inform the Court of the most recent developments regarding the imposition of costs and fees (Docket No. 339). Therein, parties notified the Court that they have stipulated to the imposition of $240.00 of the $530.00 total fees for service of summons and subpoenas. Additionally, Plaintiff continued to request $3,646.40 in fees for transcripts, and Defendants continued to oppose the imposition of this fee. As for the fees associated with photocopies, Plaintiff has reduced the original amount to $644.20; Defendants continued to oppose imposition of this fee. Additionally, Plaintiff continued to request $7,225.81 in interpreters' fees, of which Defendants oppose $630.00 for interpretation of a witness at the injunction hearing. Parties attached to this informative motion exhibits outlining the status of the attorneys' fees requested, noting if the fees were stipulated, objected-to or reduced.[2]

At the subsequent hearing (Docket No. 343), the Court addressed the remaining disagreements. First, the Court denied Plaintiff's request for $290.00 in fees for the service of summons and subpoenas relating to Defendants sued in their individual capacities. As to the disputed costs

---

2. Although the Court originally expressed that it would allow parties to argue their respective positions regarding the disputed requests for attorney's fees, particularly Defendants's request for a global reduction, (Docket No. 328) in the May 10, 2010 hearing, as the parties indicated that the Court should rule upon these disputed items "based upon the allegations and defenses raised in (sic) the

parties' respective memoranda (sic)" in the final joint motion (Docket No. 339) regarding fees, the Court primarily addressed the disputes regarding the *Bill of Costs* in that hearing and shall rule on the requests for fees based upon the various motions submitted by parties, as well as the arguments presented in previous hearings and any related arguments raised by parties during the May 10, 2010.

for transcripts and interpreters' fees, after hearing parties' arguments, the Court represented that it would review the record prior to ruling on those costs. The parties also continued to dispute the taxation of costs related to photocopies. Although Defendants disputed the sufficiency of Plaintiff's itemization of the copies, Plaintiff drew the Court's attention to Exhibit 8 of the March informative motion, stating that they had sufficiently itemized the copies there. Defendants further argued that Plaintiff failed to distinguish whether the photocopies were created for the appeal, and the Court stated that it would examine the itemization to determine if this was accurate, as the Trial Court is barred from taxing Defendants for copies made for the appeal. Finally, Defendants reiterated their arguments against the imposition of attorney's fees related to the unsuccessful motion for preliminary injunction and appeal. Specifically, Defendants noted that Plaintiffs failed to appeal the denial of the preliminary injunction and, as a result, were not a prevailing party for the purposes of imposing fees related to that motion. Defendants also argued that the Defendants who remained in the instant case were not parties to the appeal and, as a result, imposing fees upon them related to the appeal would be unfair.

## II. BILL OF COSTS

■ Rule 54(d) of the Federal Rules of Civil Procedure provides that the Court should tax costs of litigation other than attorney's fees on the behalf of a prevailing party. FED.R.CIV.P. 54(d). In this District, such costs may be taxed only where a bill of costs is filed within thirty days of the entry of judgment and properly explained and supported with evidence which supports the taxation of these costs. *Taxation of Costs Guidelines* IB. The Court shall deny any request for costs which are not properly supported with

such evidence. *Taxation of Costs Guidelines* IC. Thus, the Court's baseline in determining whether to grant costs to a prevailing plaintiff weighs in favor of taxing costs which are allowed by the *Taxation of Costs Guidelines and* which are properly supported with documentation and evidence. *See Rivera Pomales v. Bridgestone Firestone, Inc.,* 224 F.R.D. 50, 51 (D.P.R.2004) (summarizing First Circuit case law to find that, although the Court retains discretion in awarding costs, it must justify instances where costs are not awarded to a prevailing party).

## A. PHOTOCOPIES

■ A prevailing party in this District may request that the Court tax fees for photocopying papers "necessarily obtained for use in the case." *Taxation of Costs Guidelines* F. The phrase "necessarily obtained" is defined as including "copies of briefs, court documents, and trial exhibits, provided, however, that the copies were received as evidence, prepared for use in presenting evidence, obtained for service on the other parties in the litigation and the Court, or were necessary to the maintenance of the action." *Id.* The *Guidelines* explicitly prohibit the taxation of photocopies made "for the convenience, preparation, research or records of counsel," although the Guidelines do not mandate that photocopies actually be used at trial. *Id.*

In the *Bill of Costs,* Plaintiff requests $1,620.63 in photocopying expenses, supporting this request with xeroxes of two cancelled checks to the Secretario de Hacienda, with a Spanish notation in the "Memo" line of each, six invoices from Plaintiff's counsel, three of which are in Spanish, one receipt for copies from the District Court, three invoices from an external company, and an American Express bill in Spanish. After Defendants challenged the sufficiency of the evidence sup-

porting imposition of this cost, Plaintiff responded that an undisclosed number of the copies were purchased from the Puerto Rico Treasury Department and that the number of photocopies in the instant case was understandably large. Later, Plaintiff reduced the amount requested for copies to $644.20 and attached an itemized list of the copies made, along with an explanation of the purpose served by the documents. Defendants only generally objected to this new request for taxation of photocopying costs.

■ Upon review of the itemization provided by Plaintiff, along with the explanation of the uses of the documents,[3] the Court finds that these photocopies, which form the evidentiary backbone of Plaintiff's case, were sufficiently necessary to the maintenance of the action to merit their taxation as costs. Thus, the Court will **GRANT** Plaintiff's request that Defendants be taxed for the costs of the photocopies. However, as the maximum cost per page allowed by the *Guidelines* is $0.15, the cost per page shall be reduced from $0.20 to $0.15, for a total[4] of $483.15.

## B. INTERPRETER FOR PRELIMINARY INJUNCTION HEARING

■ The Guidelines and 28 U.S.C. § 1920(6) provide for the taxation of translations and interpreters' fees by prevailing parties. *Taxation of Costs Guidelines* H. Here, Defendants only object to the taxation of costs for an interpreter who translated for a witness during a hearing on the ultimately unsuccessful preliminary injunction motion. Defendants base their objection upon an argument that Plaintiff was not successful in his motion and, accord-

ingly, should not be considered a prevailing party for purposes of imposing costs related to this motion.

Here, Defendants have cited no cases which stand for the proposition that a plaintiff who ultimately prevails at trial, but whose motion for preliminary injunction is denied, should be denied the costs associated with the preliminary injunction hearing. However, in turn, Plaintiff has failed to articulate in any but the most general terms why the translated testimony was reasonably necessary to the maintenance of the instant action.

■ Under the Local Rules, translation costs which are reasonable and relevant to the litigation may be taxed and, under 28 U.S.C. § 1920(6), interpreter's fees may also be taxed. *See Zayas v. Puerto Rico,* 451 F.Supp.2d 310, 318 (D.P.R.2006); *see also Pan Am. Grain Mfg. Co. v. Puerto Rico Ports Auth.,* 193 F.R.D. 26, 38 (D.P.R.2000). However, as this District Court has previously emphasized, the prevailing party bears the burden of showing that such expenses should, in fact, be taxed. *Pan Am. Grain,* 193 F.R.D. at 38. As Plaintiff in the instant case did not prevail· on his motion for injunction and, further, as he offers only a general statement that he should be reimbursed for the costs associated with the interpreter at the hearing regarding this motion, the Court must find that he has not met this burden. Accordingly, the Court **DENIES** Plaintiff's request that Defendants be taxed $630.00 for the translation that occurred during the preliminary injunction hearing.

## C. TRANSCRIPT

■ The final remaining dispute regarding Plaintiff's *Bill of Costs* arises over a

---

**3.** As the Court is expressly precluded from considering documents in Spanish when making a ruling, the Court has ignored the Spanish writing in the Memo portion of the checks written to "Secretario de Hacienda" (the Sec-

retary of Treasury of Puerto Rico) in performing its analysis. *See* Local Rule 5(g).

**4.** The total number of photocopies now claimed by Plaintiff is 3,221.

$3,646.40 fee for transcripts of the preliminary injunction proceedings purchased by Plaintiff. Unlike many costs, "[g]enerally, daily transcripts of court proceedings are not taxable as costs" except in "lengthy and complex cases, or cases showing special circumstances, where the transcript is essential to counsel for effective performance or when ordered by [the] Court." *Taxation of Costs Guidelines* C. When a prevailing party requests that the Court tax a transcript as a cost where the transcript was used in support of a motion, that party must identify both the motion for which it was used and the date on which it was filed. *Id.* Further, if a transcript "was used at trial, the date the transcript was read into the record is to be provided." *Id.*

■ Here, Plaintiff asserts that, because the preliminary injunction hearings were lengthy, the transcripts purchased by Plaintiff were not obtained solely for the convenience of counsel. Further, Plaintiff broadly alleges that the transcripts were used for cross examination and impeachment of witnesses and, accordingly, should be taxed. As Plaintiff has failed to identify the specific manner in which, or time when, the transcripts were utilized, either in motions or during trial, the Court can not find that Plaintiff has shown that these documents were essential to counsel's effective performance. Accordingly, the Court must find that these transcripts were purchased for the convenience of counsel and, accordingly, the request that the cost of these transcripts be taxed is hereby **DENIED.**

## D.  OTHER COSTS

As parties have reached a mutually acceptable agreement regarding the other costs included in the *Bill of Costs*, the Court shall not analyze these items. Rather, the Court **GRANTS AND DENIES** these costs as parties have previously agreed.[5] As already stated previously, the Court has denied Plaintiff's request for the taxation of $290.00 in fees for the service of summons and subpoenas as well as $630.00 for interpretation services at the preliminary injunction hearing. Thus, the Court shall tax a total of $7172.11 in costs to Defendants.

## III.  ATTORNEY'S FEES

■ When Congress passed the Civil Rights Attorney's Fees Act, 42 U.S.C. § 1988, it intended that this legislation would encourage "persons to seek redress for civil rights violations through judicial avenues" by providing that prevailing parties in civil rights actions are entitled to reasonable attorneys' fees except where "special circumstances would render such an award unjust." *Torres–Rivera v. O'Neill–Cancel,* 524 F.3d 331, 336 (1st Cir. 2008) (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 429, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983))(internal quotation omitted). Thus, the Court's touchstone in awarding fees to a prevailing party in a civil rights action is the reasonableness of the fees requested. *See id.* Typically, reasonableness is determined through the lodestar method,[6] through which the Court multi-

---

**5.**  The parties have stipulated to $240.00 in fees associated with service of process and $6,595.81 in interpreters' fees.

**6.**  In addition to a determination of reasonable hours and a reasonable rate as discussed below, the factors which the Court may consider when performing the lodestar analysis are:

(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney(s) due to acceptance of the case; (5) the customary fee; (6) the nature of the fee (fixed or contingent); (7) the time limitations imposed by

plies the "number of hours productively spent by a reasonable hourly rate to calculate a base figure." *Id.*

■■■ "Reasonableness in this context is largely a matter of informed judgment" and the Court is guided in its calculations by principles of equity while it "strive[s] to determine the most fair and sensible solution for apportioning the fee award." *Id.* at 336–337 (quoting *Grendel's Den, Inc. v. Larkin,* 749 F.2d 945, 960 (1st Cir.1984))(internal quotation omitted). Prior case law provides guidance for the Court's exercise of this equitable power, however. For example, it is well-established that the Court should "eliminate time that was unreasonably, unnecessarily or inefficiently devoted to the case." *Id.* at 336 (citing *Hensley,* 461 U.S. at 433, 103 S.Ct. 1933). Further, the Court may deem fees unreasonable where the "reported hours are excessive, redundant, or otherwise unnecessary." *Id.* (quoting *Hensley,* 461 U.S. at 434, 103 S.Ct. 1933)(internal quote omitted). Additionally, the Court "may discount or disallow [hours] claimed if it determines that the time is insufficiently documented" or if the prevailing party fails to provide the Court with sufficiently specific records to allow the Court to make a determination regarding excessiveness or redundancy. *Id.*

In the instant case, Defendants do not contest the reasonableness of the hourly fees requested by Plaintiff. Rather, De-

fendants request that the Court make a global reduction in fees granted to Plaintiff after deducting time spent pursuing unsuccessful endeavors,[7] namely the motion for preliminary injunction and appeal. In support of its request for a global reduction, Defendants notes that Plaintiff only recovered against 12.5% of the original Defendants and that Plaintiff received 0% of the requested damages and back pay.

## A. THE MOTION FOR PRE-LIMINARY INJUNCTION AND THE APPEAL

Defendants ask that the Court deny Plaintiff's request for fees associated with the interlocutory appeal regarding qualified immunity and for fees associated with the motion for preliminary injunction, which the Court denied. In turn, Plaintiff offers no particularized argument for why these fees should be granted, but, rather, simply argues that a global reduction due to Plaintiff's failure to prevail on these particular claims is inappropriate. Plaintiff thus rests his arguments for granting fees associated with the failed motion and appeal on the same line of argumentation and case law as his arguments against the imposition of a global reduction.

■■■ Under the doctrine of interrelatedness, where "a civil rights suit consists of multiple claims, and when the plaintiff prevails on some of them but not on others, the plaintiff is entitled to fees

the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney(s); (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) the size of awards in similar cases. *Coutin v. Young & Rubicam Puerto Rico, Inc.,* 124 F.3d 331, 337 n. 3 (1st Cir.1997); *see also Guillemard–Ginorio v. Contreras,* 603 F.Supp.2d 301, 310 (D.P.R.2009).

7. Although Defendants originally argued that paralegal services were duplicative of work done by attorneys, as the only un-stipulated paralegal services charges remaining pertain to the unsuccessful motion for preliminary injunction, it appears that Defendants and Plaintiff have reached an agreement as to any other potentially duplicative charges for paralegal services. Thus, the charges for paralegal services are analyzed along with the other disputed charges for work done in association with the motion for preliminary injunction.

for hours worked not only on the successful civil rights claims, but also on other claims involving a common core of facts or related legal theories." *Aubin v. Fudala,* 782 F.2d 287, 290 (1st Cir.1986). Accordingly, where the unsuccessful claims share a common core of facts or are based on legal theories related to successful claims, the Court should "focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended." *Hensley,* 461 U.S. at 435, 103 S.Ct. 1933; *see also Guillemard–Ginorio,* 603 F.Supp.2d at 324–25. Along these lines, the Supreme Court has articulated two questions which the Court should ask in determining whether a fee reduction is appropriate: "[f]irst, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the Plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?" *Hensley,* 461 U.S. at 434, 103 S.Ct. 1933; *see also Coutin,* 124 F.3d at 339. Thus, it is settled that the Court possesses the discretion to "disallow time spent in litigating failed claims." *Torres–Rivera,* 524 F.3d at 336.

■ Upon review of the *Opinion and Order* denying Plaintiff's motion for a preliminary injunction, it is apparent that the Court rested its decision upon a determination that the case was infused with necessary findings of credibility, weighing of evidence and issues of motive and intent which were necessarily left for the jury. Accordingly, no motion for summary judgment was filed by Defendants in the instant case. Thus, although Plaintiff was not successful in his motion for preliminary injunction, with the efforts directed at gaining an injunction, he precluded the filing of a motion for summary judgment by Defendants. Accordingly, as Plaintiff undoubtedly saved himself hours of attor-

neys' fees opposing such a dispositive motion, the Court cannot find that the hours spent in relation to the failed motion for preliminary injunction were fruitless. Furthermore, as several fundamental issues which were raised and ultimately resulted in the denial of the preliminary injunction mirrored the issues which were ultimately tried before and decided by a jury, the Court must conclude that common facts and legal issues pertained to both the failed motion for preliminary injunction and to the claims upon which Plaintiff ultimately succeeded.

However, although common issues of fact and law pertained to both the motion for preliminary injunction and the claims upon which Plaintiff succeeded at trial, the Court cannot say that the majority of the many hours spent pursuing a preliminary injunction were beneficial to Plaintiff's case as a whole. Accordingly, the Court shall **GRANT** Plaintiff 45% of the disputed fees relating to the motion for preliminary injunction. *See United States v. Flash II,* 546 F.3d 26, 38 (1st Cir.2008)("There is no rigid prescription that must be followed in effecting such a reduction. The district court may either eliminate specific hours or reduce the overall fee to account for the prevailing party's limited success.").

■ Likewise, although the First Circuit ultimately found in favor of the appealing Defendants in the interlocutory appeal, it did affirm that Plaintiff's position was, in fact, a career position protected by the First Amendment and actionable under 42 U.S.C. § 1983, a conclusion which Defendant vehemently denied prior to entry of the Court of Appeals' decision in Plaintiff's favor on this issue. Thus, although most Defendants ultimately prevailed on their claims of qualified immunity, the grounds upon which they prevailed actually strengthened the remainder of Plaintiff's case as the First Circuit clarified

the case law in Plaintiff's favor. Accordingly, the Court once again finds that, although Plaintiff was ultimately unsuccessful in the Court of Appeals, his efforts in preparing for the appeal were not entirely fruitless. However, once again, the Court can not find that the majority of such efforts ultimately aided Plaintiff in his case against the remaining Defendants. Accordingly, the Court **GRANTS** Plaintiff 45% of the disputed charges for attorneys' fees attributable to the work associated with the interlocutory appeal, which resulted in a determination that eventually proved the hours spent on the appeal productive for Plaintiff as they greatly assisted him in achieving a prevailing party status when the instant case went to the jury. See *Flash II*, 546 F.3d at 38.

■ The Court also notes that it will not further reduce the fees beyond this initial 55% reduction for potentially duplicative or excessive efforts made by Plaintiff's counsel. A review of the time sheets submitted by Plaintiff's counsel reveals that these records provide a sufficiently detailed account of the manner in which billed hours were expended for the Court to determine that the billed hours were reasonably expended without any notably duplicative efforts. See *Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 297 (1st Cir.2001)(noting that, where counsel fail to provide time records which account for time billed in reasonable detail, the award may be slashed or disallowed and also finding that staffing multiple lawyers on a single issue or task is often reasonable in modern litigation). Accordingly, the Court includes all contested fees into its calculations at this stage. The total in disputed charges for attorney's fees at this time [8] is $108,775.35. Consequently, following the 55% deduction which the Court stated that it would impose above, Plaintiffs shall be granted $48,948.91 of the disputed fees.

## B. GLOBAL REDUCTION

Finally, Defendants request that the Court take into account the limited nature of Plaintiff's success in the instant case in order to impose a global reduction [9] on all

---

8. The disputed charges consist of: (1) $9,047.50 for 38.5 hours of order and motion review by lead counsel at $235 per hour; (2) $587.50 for 2.5 hours of letter drafting by lead counsel at $235 per hour; (3) $1,036.35 for 4.1 hours of meetings attended by lead counsel; (4) $26,367.50 for 99.5 hours of court appearances by lead counsel at a rate of $265 per hour; (5) $225.00 for 2.5 hours which lead counsel spent in an initial scheduling conference billed at a rate of $90 per hour; (6) $17,237.25 for 73.35 hours spent by lead counsel drafting motions at a rate of $235 per hour; (7) $27,730.00 for 118 hours of research performed by lead counsel at a rate of $235 per hour; (8) $340.75 for 1.45 hours of telephone calls by lead counsel at a rate of $235 per hour; (9) $2,733.00 for 29.9 hours at a rate of $90 per hour and .7 hours at a rate of $60 per hour for other attorneys to review orders and motions; (10) $157.50 for other attorneys to draft letters for 1.75 hours at a rate of $90 per hour; (11) $67.50 for .75 hour of participation in meetings by other attorneys at a rate of $90 per hour; (12) $1,080.00 for 12 hours of court appearances by non-lead counsel at a rate of $90 per hour; (13) $9,171.00 for 101.9 hours of motion drafting performed by other attorneys at a rate of $90 per hour and $435 for drafting performed by paralegals for 7.25 hours at a rate of $60 per hour; and (14) $12,559.50 for 139.55 hours of research performed by paralegals and non-lead counsel at a rate of $90 per hour.

9. Although Defendants stipulated to many of the attorneys' fees in the instant case, or entered into an agreement with Plaintiff for their reduction, Defendants argue that these stipulated or reduced fees should still be subject to a global reduction. Thus, it appears that Defendant has only stipulated that the hours worked are properly documented and that the rates claimed for those hours would be reasonable for the type of work done and for the experience of the person performing

fees granted. Specifically, Defendants highlight Plaintiff's inability to recover monetary damages beyond payment of front pay as a reason for imposing a global reduction. Further, Defendants note that Plaintiff's claims against all other Defendants were dismissed, asserting that this factor weighs in favor of the imposition of a global reduction.

■■■ "[A]fter the basic lodestar is calculated, the [C]ourt may adjust it, up or down, to reflect other considerations, such as the results obtained." *United States v. Flash II*, 546 F.3d 26, 38 (1st Cir.2008). The Court bears the discretion to make an equitable reduction where a prevailing party enjoys only limited success at trial. *Wagner v. City of Holyoke, MA*, 404 F.3d 504, 510 (1st Cir.2005).

■■■ As a preliminary matter, the Court notes that, although the Court should not reduce requested attorney's fees solely based upon a disparity between damages sought and those awarded, the Court should consider this factor as it calculates damages to be awarded. *See Flash II*, 546 F.3d at 40 n. 8; *see also Coutin*, 124 F.3d at 337. It is true, however, that a great disparity exists between the damages originally sought in the instant case and those which Plaintiff ultimately recovered. In the *Complaint*, the remedies sought by Plaintiff included reinstatement, $18,000,000 in compensatory damages, punitive damages, and double damages under state law. Ultimately, Plaintiff only received an order of reinstatement and front pay from the time of entry of judgment in the instant case.

Thus, the Court finds that the extreme disparity between the relief requested and that which was ultimately awarded weighs heavily in favor the imposition of a global reduction of all fees in the instant case.

Defendants also note that only Plaintiff, and not his wife nor the conjugal partnership between them, obtained relief. Further, Defendants argue that Plaintiff only obtained relief from one of the original named Defendants. Thus, Defendants allege, Plaintiff was only successful in a small fraction of his case [10] when the case is viewed in light of its component parts. Again, the Court finds merit in Defendants' assertions that these factors weigh in favor of imposing a global reduction in fees.

However, although Plaintiff was limited in his success, the Court does not wish to overlook the underlying fact that Plaintiff ultimately prevailed when the jury found that political affiliation played a substantial or motivating factor in his dismissal and that Defendants failed to prove a non-discriminatory reason for Plaintiff's termination by a preponderance of the evidence. Further, the Court emphasizes that the law and facts which underlie Plaintiff's failed claims are significantly interrelated with the claim upon which Plaintiff ultimately prevailed. Thus, the Court concludes that, while several factors weigh in favor of a global reduction in the instant case, such a reduction should not be overly great as Plaintiff's failed claims were closely interrelated with the claims upon which Plaintiff succeeded. *See e.g. Coutin*, 124 F.3d at 339. Further, in reaching the

the work. Defendant has not, therefore, stipulated that Plaintiff should, in fact, be awarded the entirety of these fees as a prevailing party. Rather, Defendant continues to argue that, because of the limited nature of Plaintiff's success, he should not receive the total hours claimed as a prevailing party.

10. *But see Coutin*, 124 F.3d at 339 (wherein Plaintiff received a modest award but Defendant was ordered to pay attorney's fees that far surpassed the jury award).

percentage by which the Court shall reduce all fees, the Court notes that Plaintiff has already voluntarily decreased the amount of fees requested from $224,237.85 to $219,346.45 [11] in negotiations with Defendants at the Court's instruction. Accordingly, the Court **GRANTS** Defendants' request for a global reduction in all fees claimed by Plaintiff and shall reduce all fees by **15%**.

As already stated above, the Court has granted $48,948.91 of the original $108,340.35 in disputed attorneys' fees requested by Plaintiff. Additionally, parties have stipulated to a total of $111,006.10 in fees. Thus, the total attorneys' fees to be granted, prior to the imposition of a global reduction is $159,955.01 and the actual fees to be imposed following the 15% global reduction is $135,961.76. Accordingly, the Court hereby **GRANTS** Plaintiff's request for attorneys' fees in the amount of **$123,612.99** and **DENIES** any fees above this amount.

## IV. CONCLUSION

For the reasons stated above, the Court hereby **GRANTS IN PART AND DENIES IN PART** both Plaintiff's request for attorneys' fees (Docket No. 289) and Plaintiff's bill of costs (Docket No. 288). The Court hereby taxes Defendants $7,172.11 in costs and imposes attorneys' fees of **$135,961.76**.

**IT IS SO ORDERED.**

### *ON RECONSIDERATION*

Pending before the Court is Defendants' *Motion for Partial Reconsideration of the Court's Opinion and Order on Fees and Costs* (Docket No. 349), which was filed on May 27, 2010 in response to the Court's *Opinion and Order* (Docket No. 348) granting in part and denying in part Plaintiff's motion for attorneys' fees and bill of costs. In Defendants' motion for reconsideration, they only dispute the Court's decision to award Plaintiff 45% of the disputed fees related to an interlocutory appeal.

Defendants argue that the Court lacked discretion to grant these fees as Plaintiff was not a prevailing party at the interlocutory appeal itself, although they do not dispute that Plaintiff was ultimately the prevailing party in the instant case. Defendants argue that, although the First Circuit Court of Appeals found that Plaintiff, in fact, held a career position, which was entitled to First Amendment protection, because that was not the primary issue upon appeal, the Court should not have awarded Plaintiff any fees associated with the appeal.

---

11. The fees requested after parties' stipulations are as follows: (1) $11,973.25 for 50.95 hours reviewing orders and motions at a rate of $235 per hour; (2) $2,884.50 for 32.05 hours reviewing orders and motions at a rate of $90 per hour; (3) $57.00 for .95 hour reviewing orders and motions at a rate of $60 per hour; (4) $1,092.75 for 4.65 hours drafting letters at a rate of $235 per hour; (5) $328.50 for 3.65 hours drafting letters at a rate of $90 per hour; (6) $4,603.65 for 19.59 hours attending meetings at a rate of $235 per hour; (7) $667.80 for 7.42 hours attending meetings at a rate of $90 per hour; (8) $53,000.00 for 200 hours of court appearances at a rate of $265 per hour; (9) $10,340.00 for 44 hours of court appearances at a rate of $235 per hour; (10) $1,080.00 for 12 hours of court appearances at a rate of $90 per hour; (11) $38,218.05 for 162.63 hours drafting motions at a rate of $235 per hour; (12) $20,481.30 for 227.57 hours drafting motions at a rate of $90 per hour; (13) $1,036.80 for 17.28 hours drafting motions at a rate of $60 per hour; (14) $54,050.00 for 230 hours performing research at a rate of $235 per hour; (15) $15,889.50 for 176.55 hours performing research at a rate of $90 per hour; (16) $1,269.00 for 21.15 hours performing research at a rate of $60 per hour; (17) $1,854.15 for 7.89 hours on telephone calls at a rate of $235 per hour; and (18) $520.20 for 5.78 hours on telephone calls at a rate of $90 per hour.

Motions for reconsideration are generally considered either under Rules 59 or 60 of the Federal Rules of Civil Procedure, depending on the time when such motion is served. *See Perez–Perez v. Popular Leasing Rental, Inc.,* 993 F.2d 281, 284 (1st Cir.1993). It is settled that "[a] motion for reconsideration does not provide a vehicle for a party to undo its own procedural failures and it certainly does not allow a party to introduce new evidence or advance new arguments that could or should have been presented to the district court prior to judgment." *Marks 3–Zet–Ernst Marks GmBh & Co. KG v. Presstek, Inc.,* 455 F.3d 7, 15–16 (1st Cir. 2006). Thus, a motion for reconsideration cannot be used as a vehicle to re-litigate matters already litigated and decided by the Court. *See Standard Quimica De Venezuela v. Central Hispano Int'l, Inc.,* 189 F.R.D. 202, fn. 4 (D.P.R.1999). These motions are entertained by courts if they seek to correct manifest errors of law, present newly discovered evidence, or when there is an intervening change in law. *See Prescott v. Higgins,* 538 F.3d 32, 45 (1st Cir.2008); *see also Rivera Surillo & Co. v. Falconer Glass Indus., Inc.,* 37 F.3d 25, 29 (1st Cir.1994) (citing *F.D.I.C. v. World University, Inc.,* 978 F.2d 10, 16 (1st Cir.1992)). A motion for reconsideration is unavailable if said request simply brings a point of disagreement between the court and the litigant, or reargues matters already properly disposed of by the Court. *See e.g. Waye v. First Citizen's National Bank,* 846 F.Supp. 310, 314 n. 3 (M.D.Pa.1994).

Defendants' motion for reconsideration presents the Court with precisely the type of disagreement between the Court and a party for which a motion for reconsideration is patently inappropriate. Although Defendants claim that their reconsideration is based upon an error of law by the Court, they have not presented the Court with a single case which holds that the Court lacks the discretion to make a partial award of attorneys' fees for work done in preparation for an interlocutory appeal where an ultimately prevailing party lost, **but still saved itself billable hours which would have been later expended had the Court of Appeals not addressed the collateral issue, deciding it in favor of Plaintiff, who was ultimately the prevailing party.**

In their motion for reconsideration, Defendants first cite several cases for the proposition that the Court may not award fees under 42 U.S.C. § 1988 to a party who is not a prevailing party. Nothing in the Court's previous *Opinion and Order* rebuts this general statement of the law. In fact, the Court based its decision upon precisely that principle. This general rule, however, does not extend to demand that a party prevail in every aspect of his or her case in order to recover attorneys' fees. Rather, it is well established that the Court may take the degree of a prevailing party's success into account when performing its lodestar. *See e.g. Coutin v. Young and Rubicam Puerto Rico, Inc.,* 124 F.3d 331, 337 n. 3 (1st Cir.1997)(listing among the factors which the Court may consider "the results obtained"); *see also Guillemard–Ginorio v. Contreras,* 603 F.Supp.2d 301, 310 (D.P.R.2009).

None of the cases cited by Defendants stand for any proposition except the general rule that the Court must disallow fees where a party is not truly a case's "prevailing party" for the purposes of 42 U.S.C. § 1988. Clearly, Plaintiff in the instant case was a prevailing party; Defendants do not dispute this. The cases cited by Defendants do not mandate that the Court dissect a case into its component parts, making individual determinations regarding prevailing party status for each of these pieces. Accordingly, the Court can

not find that the cases cited by Defendants act as an outright bar against the fees which the Court granted relating to the interlocutory appeal.

The Court agrees with Defendants' assertion that appealing Defendants, and not Plaintiffs, prevailed in the interlocutory appeal. Further, the Court agrees with Defendants' argument that, in awarding partial fees to Plaintiff for the work done in preparation for the interlocutory appeal, the Court allowed Plaintiff to recover fees which indirectly related to the case at the trial court level. The Court, however, disagrees with Defendants' assertion that granting these fees is outside of the Court's wide discretion in awarding attorneys' fees. See Diaz–Rivera v. Rivera–Rodriguez, 377 F.3d 119, 126 (1st Cir.2004) (stating that "the district court is vested with wide discretion and brings to bear an ability to weigh against the total background the significance of any contributions and the appropriateness of any award of fees and costs").

The lynchpin of Defendants' argument against the partial imposition of fees associated with the interlocutory appeal is a single case, which Defendants claim supports the proposition that there is no just basis for imposition of fees for the work performed in association with the interlocutory appeal. The case cited by Defendants, United States v. One Star Class Sloop Sailboat (Sloop II ), 546 F.3d 26 (1st Cir.2008), does not support this proposition, however. Rather, that case states that "[t]he extent of success achieved by a prevailing party is a crucial factor in shaping a fee award." Sloop II, 546 F.3d at 38. Although the First Circuit in that case noted that the Court bears the discretion to exclude time spent litigating unsuccessful claims, it certainly did not mandate that the Court do so. See id. at 38–39. Rather, that case repeated the directive that a district court should evaluate a pre-

vailing party's success claim by claim and consider the relief actually obtained when performing its lodestar. Id. Thus, the case cited by Defendants merely reiterates a general statement of the law—that the Court may take into account the limited nature of a prevailing party's success in performing its lodestar.

In determining that Plaintiff was entitled to 45% of the fees associated with the interlocutory appeal, the Court clearly stated that the fees were granted because Plaintiff saved a later expenditure of time litigating his career employment status, a status which all Defendants vehemently denied, even before the Court of Appeals. In this manner, the Court took into account the fact that Plaintiff did not prevail at the interlocutory appeal while striving not to penalize Plaintiff for being successful on the issue of whether his employment was, in fact, deemed a career position. **The Court emphasized, and continues to emphasize, that this determination by the Court of Appeals in Plaintiff's favor saved Plaintiff the necessity of litigating the issue at a later stage of the case in the trial court.** Accordingly, the Court felt that to deny Plaintiff all fees associated with this issue, which was litigated in the Court of Appeals, rather than in the District Court, would be unjust as such hours were reasonably spent. Defendants have presented the Court with no argument to the contrary in their motion for reconsideration. Rather, Defendants have simply restated their previous arguments against the imposition of these fees; such argumentation is not appropriate for a motion for reconsideration.

Consequently, Defendants' motion for reconsideration is **DENIED.**

**IT IS SO ORDERED.**